IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

HECTOR VELEZ GONZALEZ AND
HIPOLITO GONZALEZ ANDINO,

Plaintiffs,

v.                                                    CIVIL NO. 03-1755 (DRD)

SUIZA DAIRY CORP.,

Defendant.

## REPORT AND RECOMMENDATION

## I.  INTRODUCTION

Plaintiffs Héctor Vélez González and Hipolito González Andino (hereinafter plaintiffs "Vélez González" and "González Andino) filed their federal claims against defendant Suiza Dairy Corp., their former employer, for alleged age discrimination and age and race discrimination, respectively.  Title VII of the Civil Rights Act, 42 U.S.C. §2000e, *et seq*. and Age Discrimination in Employment Act, 29 U.S.C. §621, *et seq*. (ADEA).  Plaintiffs also filed pendent state jurisdiction claims under Puerto Rico Law 100 of June 30, 1959, 29 L.P.R.A. §146 *et seq*. and Law 80 of May 30, 1976, 29 L.P.R.A. §185 *et seq*. (**Docket No. 1, ¶¶1-2, 15-16, 20, 25 and 29**).

Defendant Suiza Dairy Corp., (hereinafter "Suiza Dairy") filed its answer to the complaint raising above plaintiffs were terminated from employment for failure to comply with policies of their employer in the adequate operation of the business and with the duties and

responsibilities of their positions, including failure to achieve required sales quotas and goals and compliance with money collection procedures (**Docket No. 6, ¶¶10-12**).

After multiple judicial proceedings, defendant Suiza Dairy Corp. filed a motion for summary judgment, with corresponding attachments and sworn statements (**Docket Nos. 42, 43, 45, 46 and 48**).  Plaintiffs Vélez González and González Andino submitted their opposition and a statement of contested facts in support (**Docket Nos. 55 and 58**).  Both parties were also allowed to submit responses, oppositions and sur-replies (**Docket Nos. 56, 57, 69, 75, 88, 93 and  95**).  Thereafter, the corresponding translations into the English language were filed (**Docket Nos**.  **62, 77 and 78**).

Above plaintiffs additionally submitted respective motions *in limine* seeking to exclude from the record and the consideration of the Court documents attached by defendant in its summary judgment (**Docket Nos. 60 and 61**).  Defendant Suiza Dairy filed its opposition to plaintiffs' motions *in limine* (**Docket No. 70**).  The parties' requests for leave to file additional oppositions and replies as to the *in limine* requested rulings were denied by the Court **(Docket No. 90).**

The aforementioned motions were referred to this Magistrate Judge for report and recommendation (**Docket No. 98**).

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Pursuant to the language of the rule, the moving party bears the two-fold burden of showing that there is "no genuine issue as to any material facts," and that he is "entitled to judgment as a matter of law." Vega-Rodríguez v. Puerto Rico Tel. Co., 110 F.3d 174, 178 (1st Cir., 1997). After the moving party has satisfied this burden, the onus shifts to the resisting party to show that there still exists "a trial worthy issue as to some material fact." Cortés-Irizarry v. Corporación Insular, 111 F.3d 184, 187 (1st Cir. 1997). A fact is deemed "material" if it potentially could affect the outcome of the suit. Id. Moreover, there will only be a "genuine" or "trial worthy" issue as to such a "material fact," "if a reasonable fact-finder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." Id.

At all times during the consideration of a motion for summary judgment, the Court must examine the entire record "in the light most flattering to the non-movant and indulge all reasonable inferences in the party's favor." Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir., 1994). There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood . . . ." Greenburg v. Puerto Rico Mar. Shipping Auth., 835 F.2d 932, 936 (1st Cir., 1987). In fact, "[o]nly if the record, viewed in [this] manner and without regard to credibility determinations, reveals no

<u>Héctor Vélez González, et al. v. Suiza Dairy Corp.</u>
Civil No. 03-1755 (DRD)
Report and Recommendation
Page No. 4

genuine issue as to any material fact may the court enter summary judgment." <u>Cadle Co. v.</u>

<u>Hayes</u>, 116 F.3d 957, 960 (1ˢᵗ Cir., 1997).

Finally, when considering this motion, unsettled issues of motive and intent as to the

conduct of any party will normally preclude the Court from granting summary judgment.

<u>Mulero-Rodríguez v. Ponte, Inc.</u>, 98 F.3d 670, 677 (1ˢᵗ Cir., 1996) (reversing summary

judgment and emphasizing that "determinations of motive and intent . . . are questions better

suited for the jury") (internal quotation marks omitted) (citation omitted); *see also* <u>Tew v. Chase</u>

<u>Manhattan Bank, N.A.</u>, 728 F.Supp. 1551, 1555 (S.D.Fla. 1990) ("Certain issues such as

fraud, intent, and knowledge lend themselves to trial, rather than summary judgment. These

matters can often only be proved by reliance upon circumstantial evidence except in the rare

case where there is uncontroverted proof of a 'smoking gun.'"). However, "even in cases where

elusive concepts such as motive or intent are at issue, summary judgment may be appropriate

if the nonmoving party rests merely upon conclusory allegations, improbable inferences [or]

unsupported speculation." <u>Ayala-Genera v. Bristol Myers-Squibb Co.</u>, 95 F.3d 86, 95 (1ˢᵗ Cir.

1996).

### III. ANALYSIS

#### A.    *In Limine* Disposition.

Under Rule 401 of the Federal Rules of Evidence " 'relevant evidence' means evidence

having any tendency to make the existence of any fact that is of consequence to the

determination of the action more probable or less probable than it would be without the

evidence."   In determining if certain relevant evidence must be excluded, the Court has considerable discretion.  *See* Santos v. Sunrise Medical, 351 F.3d 587 , 592 (1st Cir.  2003). Notwithstanding relevant evidence "may be excluded if its probative value is outweighed by the danger of unfair prejudice ..." Fed. R. of Evid. 403,  the exclusion of relevant evidence, is an extraordinary measure that should be used sparingly.  *See* Campbell v. Keystone Aerial Surveys, 138 F.3d 996, 1004 (5th Cir. 1998) quoting United States v. Morris, 79 F.3d 409, 411 (5th Cir., 1996).

Relevant evidence "may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of issues or misleading the jury or by considerations of undue delay, waste of time or needless presentation of cumulative evidence." Fed. R. of Evid. 403. Under such rule, the Court has "considerable latitude in determining whether to admit or exclude evidence".  *See* Santos v. Sunrise Medical, 351 F.3d 587, 592 (1st Cir. 2003) *citing* Espeaignnette v. Gene Tierney, 43 F.3d 1, 5 (1st Cir. 1994).

Plaintiff Vélez González submits that several of defendant Suiza Dairy's uncontested facts and/or documents in support of its motion for summary judgment should be held inadmissible for not being previously disclosed during discovery, or being irrelevant, unfairly prejudicial, hearsay and/or lacking in trustworthiness and reliability, particularly as  to defendant's Exhibits 9, 11, 12-13 and 19-21 (**Docket No. 60**).  Likewise, plaintiff González-Andino requests on similar grounds exclusion of defendant's Exhibits 19, 21-22, 25-28 and 33.  Plaintiffs have

requested to exclude defendant's documents when considering summary disposition because of unfair prejudice.

Insofar as plaintiffs' request to exclude evidence because it had not been provided during the discovery period, defendant Suiza Dairy avers its answer to the complaint provided plaintiffs with notice it would raise the defense that plaintiffs' dismissals were justified by the low sales and inefficient money collection in non-compliance with the employer's established sales quotas and collection standards. Availability of the information to support such defenses was delayed beyond the discovery period because of need to restructure defendant's former computerized database and reproduce it for the case. Defendant Suiza Dairy acknowledges witnesses already deposed did not have this information available to answer questions during their depositions but the production of such data and information is now available with the filing of defendant's motion for summary judgment. As such, defendant has presented a justified showing of cause for not having previously produced discovery of the information.

Plaintiffs' arguments to exclude documents because of hearsay should rely on hearsay being inadmissible when it is offered to prove the truth of the matter discussed in them. *See* Fed. R. of Evid. 801(c). Defendant Suiza Dairy avers the report objected by plaintiffs on hearsay grounds is offered as background information to show the employer had to engage in collection efforts of salesmen under co-plaintiff Vélez González' supervision. Not only would these plaintiffs have prior knowledge about the collection efforts since such efforts were related

to a salesmen under plaintiff Vélez González' supervision and he participated in their dismissal, but such records were a regularly conducted activity.

Thus, this Magistrate Judge opines the exclusion requested by plaintiffs on hearsay grounds lacks merits.

Plaintiffs also object to admission of documents in support of defendant's summary judgment for lack of trustworthiness, reliability and relevance. A significant ground for exclusion has already been discussed above. Insofar as Exhibit 11, plaintiffs claim it is a summary drafted by unknown third persons related to accounts receivables prior to December 17, 2001, date in which plaintiff Vélez González was discharged and documents upon such information is based were not previously disclosed by defendant. Insofar as plaintiff González Andino, exclusion of Exhibits 6, 8, 13, 21-23, 25 and 33, is requested on similar grounds.

Defendant Suiza Dairy submits the aforementioned exhibits were produced once information could be retrieved from defendant's computers by a computer specialist years after its data system had been modified and the company's sales zones had been substantially re-structured. The computer programs which had to be examined to produce these reports are no longer in use by defendant Suiza Dairy, as informed to plaintiffs in its answers to plaintiffs' request for production of documents. Defendant Suiza Dairy is willing to make available the computer specialist for deposition.

Other than seeking exclusion, plaintiffs may still move to depose witnesses for the purpose of new information and the Court may still grant authorization for taking such

depositions upon plaintiffs' request. Additionally, pursuant to Fed.R.Civ.P. 37, plaintiffs may move for sanctions against defendant for a violation of Rule 26(a), including the bearing of deposition costs. Sanctions are allowed when a party without substantial justification fails to disclose information or amend its prior discovery, unless such failure is harmless. As such, plaintiffs' prayer that evidence be excluded at summary judgment level for defendant's failure to produce same during discovery period, is not warranted.

In consideration of above discussed, this Magistrate Judge finds the arguments fostered by plaintiffs to exclude documents as not relevant and/or for undue prejudice do not present the kind of situation where this extraordinary measure would be warranted. *See* Bado-Santana v. Ford Motor Co. 364 F.Supp.2d 79, 94 (D. Puerto Rico 2005).

In view of the foregoing, it is recommended that plaintiffs' motions *in limine* BE DENIED.

Thus, considering that the issues raised *in limine* were addressed above, this Magistrate Judge will discuss defendant Suiza Dairy's motion for summary judgment with all its attachments and supporting documentation, as well as plaintiffs' oppositions.

**B.   ADEA.**

The ADEA makes it "unlawful for an employer...to discharge any individual or otherwise discriminate against any individual ... because of such individual's age." 29 U.S.C. § 623(a)(1). Under the ADEA, an employer is liable if age was the motivating factor in the employer's decision. "That is, the plaintiff's age must have 'actually played a role in [the employer's decision

making] process and had a determinative influence on the outcome'." .' " Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 141, 150, 120 S.Ct. 2097 (2000) (citing Hazen Paper Co. v. Biggins, 507 U.S. 604, 610, 113 S.Ct. 1701 (1993)). Thus, in this case, plaintiffs have the burden of establishing that defendant Suiza Dairy intentionally discriminated against them based on age. *See* Shorette v. Rite Aid of Maine, Inc., 155 F.3d 8, 12 (1st Cir. 1998).

Where, as here, there is no direct evidence of discrimination, plaintiffs may prove their case through the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817 (1973). *See* Rivera-Rodríguez v. Frito Lay Snacks Caribbean, 265 F.3d 15, 25 (1st Cir. 2001); Suárez v. Pueblo Int'l, Inc., 229 F.3d 49, 53 (1st Cir. 2000); Feliciano v. El Conquistador, 218 F.3d 1, 5 (1st Cir. 2000). Under this framework, the plaintiff must prove that: (1) he was over forty (40) years of age; (2) his job performance was sufficient to meet his employer's legitimate job expectations; (3) he experienced an adverse employment action; and (4) the employer continued to need the services of the position claimant occupied. *See* De La Vega v. San Juan Star, Inc., 377 F.3d 111, 117 (1st Cir. 2004); Gonzalez v. El Dia, Inc., 304 F.3d 63, 68 n. 5 (1st Cir .2002).

Once plaintiff has complied with this initial *prima facie* burden the defendant must "articulate a legitimate nondiscriminatory reason" for the challenged conduct at which time presumption of discrimination fades and the burden then falls back on plaintiff who must then demonstrate that the proffered reason was a "pretext" and that the decision at issue was instead motivated by discriminatory animus. Gu v. Boston Police Dept., 312 F.3d 6, 11 (1st Cir. 2002);

Héctor Vélez González, et al. v. Suiza Dairy Corp.
Civil No. 03-1755 (DRD)
Report and Recommendation
Page No. 10

González v. El Día, Inc., 304 F.3d at 69; Zapata-Matos v. Reckitt & Colman, Inc., 277 F.3d 40, 44-45 (1st Cir. 2002). "At this third step in the burden-shifting analysis, the McDonnell Douglas framework falls by the wayside because the plaintiff's burden of producing evidence to rebut the employer's stated reason for its employment action merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination." Feliciano v. El Conquistador, 218 F.3d at 6.

The required *prima-facie*-case showing generates a rebuttable presumption that the defendant-employer violated the ADEA. Whereupon, the burden of production-- as distinguished from the burden of proof--shifts to the defendant-employer to articulate a legitimate, nondiscriminatory basis for its adverse employment action. Once this limited burden has been met by the defendant-employer, the presumption which attended the *prima facie* case vanishes and the claimant must adduce sufficient creditable evidence that age was a motivating factor in the challenged employment action. The plaintiff-employee may meet the burden of proof by showing that the employer's proffered reason for the challenged employment action was pretextual, from which the fact finder in turn may, but need not, infer the alleged discriminatory animus. González v. El Día, 304 F.3d at 68-69.

"Upon the emergence of such an explanation, it falls to the plaintiff to show both that the employer's proffered reasons is a sham, and that discriminatory animus sparked its actions." Cruz-Ramos v. Puerto Rico Sun Oil Co., 202 F.3d 381, 384 (1st Cir. 2000).

Defendant's "burden is one of production, not persuasion" <u>Reeves</u>, 530 U.S. at 142, 120 S.Ct. 2097, and "[a]t all times, the plaintiff bears the 'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff.'" <u>Gu v. Boston Police Dept.</u>, 312 F.3d at 11.

In a summary judgment context the court must determine "whether plaintiff has produced sufficient evidence that he was discriminated against due to his [age] to raise a genuine issue of material fact." <u>Zapata-Matos v. Reckitt & Colman, Inc.</u>, 277 F.3d at 45; <u>Rivas Rosado v. Radio Shack, Inc.</u>, 312 F.3d 532, 534 (1st Cir. 2002). Thus, summary judgment will be denied if once the court has reviewed the evidence submitted by the parties in the light most favorable to the plaintiff it finds there is sufficient evidence from which a trier of fact could conclude that the reasons adduced for the charged conduct are pretextual and that the true motive was discriminatory. <u>Santiago-Ramos v. Centennial</u>, 217 F.3d 46, 57 (1st Cir. 2000); <u>Rodriguez-Cuervos v. Wal-Mart Stores, Inc.</u>, 181 F.3d 15, 20 (1st Cir.1999).

### C.    Race discrimination under Title VII.

Title VII of the Civil Rights Act of 1964, provides, in relevant part, that: "[i]t shall be an unlawful employment practice for an employer-(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... race."    42 U.S.C. § 2003-2(a).

Absent direct evidence of discrimination, a Title VII plaintiff must resort to the three-stage burden-shifting framework set forth in <u>McDonnell Douglas</u>, as discussed above. See <u>Ayala-Gerena v. Bristol Myers-Squibb Co.</u>, 95 F.3d 86, 96 (1st Cir. 1996).

### D.   Plaintiff Héctor Vélez González burden of *a prima facie* case.

Defendant Suiza Dairy submits summary disposition is appropriate in this case as to plaintiff Vélez González for failing to establish a *prima facie* case of age discrimination beyond mere speculations and conjectures, his inability to demonstrate the reasons indicated by the employer for his termination constituted a mere pretext for discrimination and/or that the reasons to terminate were not sound and non-discriminatory.  Deft's Sum. Judg. p. 2.

Defendant Suiza Dairy further contends that since plaintiff Vélez González lacks any direct evidence of discrimination, to prevail he must be able to meet the burden-shifting framework that governs age discrimination cases under Title 29, <u>United States Code</u>, Section 623(a)(1); *see* <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. at  802-05.

It is undisputed that on February 21, 1994, plaintiff Vélez González started working for defendant Suiza Dairy as Manager of the Tropical Gardens product division.  On May 12, 1995, he resigned to work for a different employer as a supermarket manager.  On September 30, 1996, plaintiff Vélez González was rehired by Suiza Dairy as Sales Supervisor and was in charge of territorial Zone 6.  As a Sales Supervisor, among others duties but relevant to this claim, Vélez González had to: oversee the work of some twenty (20) salesmen; supervise and increase the sales of his territorial zone; ensure that accounts receivables were paid by clients who were

<u>Héctor Vélez González, et al. v. Suiza Dairy Corp.</u>
Civil No. 03-1755 (DRD)
Report and Recommendation
Page No. 13

granted credit by salesmen of the zone within seven (7) days as required by company's policy; and coordinate the installation and maintenance of refrigerators at clients' facilities, as well as conduct regular visits to clients together with subordinate salesmen.  Vélez González' depo. pp. 78-82; deft's Exhibit 1.

As to plaintiff Vélez González' age discrimination claim defendant Suiza Dairy submits (**Docket No. 43**) as uncontested issues and considered relevant to this summary judgment petition that:

1.     A reduction in force conducted by defendant in 2001 would show that most of the employees dismissed were young, that is, below forty (40) year of age.  Deft's Uncont. ¶59.

2.     Out of thirty one (31) new employees hired by defendant during the year 2001, eight (8) were over fifty (50) years of age and one (1) employee was over sixty (60) years of age.  *Id.* at ¶60.

3.     Four (4) other employees from the Sales Department were discharged during the year 2001.  *Id.* at 63.

4.     The officers at Suiza Dairy who evaluated and made the decision to terminate plaintiff Vélez González on December of 2001, were the same officers who made above hiring and discharge decisions.  Deft's Uncont. ¶ 63.[1]

---

[1]   Ms. Carmen Laura Marrero was the President of Suiza Dairy during the entire year 2001; Mr. Richard Valdés was the Sales Director in charge of recruitment and dismissals for the Sales Department during the entire year of 2001; Mr. Juan Luis Figueroa was the Sales Manager also in charge of recruitment and dismissals in the Sales Department during the year 2001; and Atty. Vanessa Boneta was the Human Resources Director.

Héctor Vélez González, et al. v. Suiza Dairy Corp.
Civil No. 03-1755 (DRD)
Report and Recommendation
Page No. 14

5.      In the year 2001, plaintiff Vélez González was evaluated and warned by the employer on several occasions, at least every three (3) months, on required improvement and need for compliance with duties as Sales Supervisor.  Deft's Exhibit 1, Vélez González' depo. p. 82.

6.      Vélez González' performance evaluation dated February 19, 2001, for the period of March 2000 through December 2000, indicated he was not meeting established sales quotas, had problems with money reconciliations of salesmen in his zone and had a high balance of account receivables. Deft's Exhibit 3.

7.      After Mr. Juan L. Figueroa, Suiza Dairy's Sales Manager, met with Vélez González, regarding his work performance, Mr. Richard Valdés issued a memo on March 22, 2001, requiring immediate improvement in relation to money collection and accounts receivable. Deft's Exhibit 4.

8.      On September 14, 2001, another meeting was held with Vélez González.  After this meeting, a memorandum was issued on September 21, 2001, for lack of adequate supervision of salesmen within his territorial zone.  Vélez González' depo. p. 55; deft's Exhibits 1 and 5.

9.      On October 16, 2001, Mr. Juan Figueroa met with plaintiff Vélez González as to high account receivables in his sales area.  Deft's Exhibit 6.

10.      On October 21, 2001, a meeting was held with Vélez González and a memorandum was issued advising about the sales quotas he was expected to

meet and problems with money collection on accounts receivables. *Id*. depo;
deft's Exhibit 6.

11.     At said meeting, Mr. Richard Valdés, Suiza Dairy's Sales Director, made
recommendations as to three (3) salesmen under plaintiff Vélez González'
supervision that required his immediate attention and he was provided with a list
of job related areas that could be improved. Deft's Exhibit 6; Vélez González'
depo, pp. 135-136.

12.     Another Sales Supervisor was assigned to assist Vélez González to increase
money collection and bring accounts receivables to date.  Valdés' depo. pp. 67,
69, 74; deft's Exhibit 7; José Figueroa's depo. pp. 128-130; deft's Exhibit 8;
Vélez González' depo pp. 96-97.

13.     Suiza Dairy, as employer, held follow-up meetings to monitor plaintiff Vélez
González' improvement and compliance with work duties as Sales Supervisor,
including one meeting in November 19, 2001.  Deft's Exhibit 6.

14.     Company policy at Suiza Dairy prohibited the accrual of high balances of clients'
debts and accounts receivables to exceed payment for more than seven (7) days.
Suiza Dairy's Sales Policy, Deft's Exhibit 10, p. 6, and Exhibit 1.

15.     By March 26, 2001, accounts receivables for plaintiff Vélez González' territorial
zone amounted to $345,880.91, and from said amount $304,322.90 had over

seven (7) days due, in violation of company policy.  Deft's Exhibits 9,[2] and 10.

16. In December of 2001, money collection of accounts receivables for Vélez González' territorial sales zone totaled $651,516.83 and from such amount, $583,358.85 had over seven (7) days due, in violation of company policy. Deft's Exhibits 9 and 10.

17. Vélez González' accounts receivables from March of 2001 in comparison to the figures of December 2001, had more than doubled during a nine (9) month period. *Id.*

18. Weekly meetings were held between Suiza Dairy's Sales Director, Mr. Richard Valdés and plaintiff Vélez González, during the months prior to his employment termination.  Vélez González depo. pp. 72-73, 92; deft's Exhibit 1.

19. Vélez González was the Sales Supervisor with the highest volume of accounts receivables in Suiza Dairy.  Deft's Exhibit 9.

20. Clients' debts, money collection, and accounts receivables in excess of seven (7) days were the duties and responsibilities of a Sales Supervisor.  Vélez González' depo. pp. 85, 89; deft's Exhibit 1.

21. Defendant Suiza Dairy had to engage in filing of money collection complaints against indebted salesmen assigned to Vélez González territorial sales zone before

---

[2] This report prepared by defendant Suiza Dairy after the discovery time table was objected by plaintiffs and is subject of this Magistrate Judge's recommendation above stated that the *in limine* request be denied.  However, if the document is otherwise ruled excluded, no consideration of this document for summary judgment determination may be appropriate.

Héctor Vélez González, et al. v. Suiza Dairy Corp.
Civil No. 03-1755 (DRD)
Report and Recommendation
Page No. 17

the Puerto Rico Court of First Instance.  Deft's Exhibit 11.

22.     Plaintiff Vélez González did not meet established sales quotas and sales goals of

his employer Suiza Dairy.  Deft's Uncont. ¶29-33.

23.     Plaintiff Vélez González held Suiza Dairy's worst sales result.  Deft's Exhibit 12

(Summary Sales by Route-Supervisor's Scoreboard).

24.     Vélez González' sales volume for the category of milk decreased by 3.9% for the

year 2000 to 2001.  *Id.*

25.     Vélez González' sales volume for the category of juices decreased by 11.6% for

the years 2000 to 2001.  *Id.*

26.     Deficiencies were observed in refrigerators located at clients' facilities of Vélez

González' subordinate salesmen.  Deft's Exhibit 13; Valdés' depo. pp. 105, 108.

27.     Defendant Suiza Dairy terminated employment of ten (10) salesmen and/or sales

supervisor during the years 2000 and 2001 for failure to comply with their

assigned duties. Deft's Exhibit 21.[3]

On the other hand, plaintiff Vélez González' opposition to summary disposition (Docket

No. 55, 56, 58) states as uncontested issues that:

1.     He was initially hired by Mr. Frank Gil, Suiza Dairy's Manager, and subsequently

by Mr. Leo Méndez.  Plaintiff's Exhibit 1, Vélez González' depo. pp. 12, 14-15.

---

[3]  Exhibit 14 - Complaint before the Department of Labor; Exhibit 15 - Regulations Anti-Discrimination Unit, and Exhibit 16 - Letter of Feb. 21, 2003, finding no probable cause, and Exhibit 17 - Opinion and Order in the case of Mr. Angel M. Viera Avila, were not considered relevant evidence for this summary judgment determination and were also objected by plaintiff.

2.    Vélez González supervised twenty three (23) salesmen and substitutes in the territorial sales area 6. *Id*. at pp. 78, 148.

3.    There were approximately fifty (50) clients per route and one (1) salesman per route. Plaintiff's Exhibit 4, Richard Valdés' depo. pp. 67-68.

4.    Vélez González had approximately one thousand (1,000) clients assigned to his zone. Plaintiffs' Uncont. ¶¶ 3-6.

5.    As of the year 2001, Vélez González had over twenty (25) years of experience in sales and supervision. Plaintiff's Exhibit 1, Vélez González' depo. pp. 13-16.

6.    Defendant Suiza Dairy granted merit salary increases based, among others, in performance and efficiency of the employees. Plaintiff's Uncont. ¶¶ 8-9 .

7.    Vélez González received merit salary increases during the years 1994 through 2000. Plaintiff's Exhibits 8-9, 11.

8.    Vélez González' sales during the year 2001 represented 30.38% of the total sales in the San Juan area. Plaintiff's Uncont. ¶ 14 a).

9.    Vélez González' sales represented 10.1% of the total sales within the whole Suiza Dairy company for the year 2001. *Id.* 14 c).

10.    Mr. Jessy Valentín, a younger supervisor, had lower sales during the years 2000 and 2001 and Mr. Javier Andreu and Ismael Mateo, other younger supervisors, had the same or higher reduction in milk sales than plaintiff Vélez González, and they were not discharged from employment. *Id*. 14 d).

11.   Mr. Jessy Valentín, Mr. Alberto García and Mr. Carlos Merced, other younger supervisors, had a higher reduction in juice sales than plaintiff Vélez González, and they were not discharged.   *Id.*

12.   Neither plaintiff was previously sanctioned, placed on probation or suspended prior to their discharge from employment at Suiza Dairy.  Plaintiff's Exhibit 6, Juan Luis Figueroa's depo. pp. 150, 178-179; Exhibit 5, Richard Valdés' depo. p. 113.

13.   Vélez González' evaluation during the year 2001 was very good or good.  Deft's Exhibit 3; Plaintiff's Uncont. ¶13.

14.   During October 2001, defendant Suiza Dairy recruited three (3) new Sales Supervisors who were younger and received higher salaries and benefits. Plaintiff's Exhibit 6, Juan Luis Figueroa's depo. at pp. 30-31; Exhibit 17; Vélez González' depo. p. 62.

Plaintiff Vélez González further contests defendant Suiza Dairy's statements as to previous sanctions or reprimands.  Nonetheless, Vélez González acknowledges receipt of various memoranda from defendant Suiza Dairy, although these were notified to all sales supervisors, not solely to plaintiffs, since all had problems with the volumes of sales and accounts receivable. In addition, the weekly meetings referred by defendant Suiza Dairy to discuss work performed were held with all sales supervisors who were informed by Mr. Richard Valdés they had to reduce pending account receivables.   Deposition testimonies of defendant Suiza Dairy's

representatives, Mr. Juan Luis Figueroa and Mr. Richard Valdés, acknowledge no sanction, reprimand or suspension being issued to plaintiffs prior to their discharge from employment.

Vélez González also contests the reports produced by defendant Suiza Dairy because they were never produced or notified during the discovery process.  Still, these documents were considered admissible for summary judgment purposes by this Magistrate Judge within the context of *in limine* disposition of motions referred by the Court, as explained above.

A review of the record shows that plaintiff Vélez González has not established a *prima facie* case of age discrimination.  We explain.

Because we find that there is no direct evidence of discrimination, we apply the McDonnell Douglas multi-factor test. The parties do not dispute two (2) of the prongs of a *prima facie* case, agreeing that plaintiff Vélez González was a member of the protected age group at the time of the alleged discrimination, and that he was terminated from his employment, thus experiencing an adverse employment action. Defendant Suiza Dairy challenges plaintiff's Vélez González *prima facie* case on the other two (2) prongs because Vélez González has not established that his job performance was sufficient to meet his employer's legitimate job expectations and that age was a motivating factor in the challenged employment action.

Insofar claims of breach of company policy for accounts receivable over seven (7) days, plaintiff Vélez González submits that debts related to credits approved by a salesman were the sole responsibility of the salesman who assumed the risk for repayment of this company debts, irrespective of debt recovery.  Plaintiff's Uncont. ¶¶20-22.   This proposition does not contest

defendant Suiza Dairy's undisputed fact that Sales Supervisor had the duty to oversee clients' debts, money collection, and accounts receivables in excess of seven (7) days and to properly supervise their salesmen in their compliance with established company policies.  Furthermore, Vélez González has not contested defendant Suiza Dairy's evidence that he was way below average of all other salespeople in meeting quotas or goals imposed but rather considered the sales imposed were unattainable.  Vélez González' depo. p. 227.  The only sales zone that was doing well was plaintiff Hipólito González, all the others were below.  *Id*. p. 229.

In addition, Vélez González also fails to establish that age was not treated neutrally or that younger individuals were retained in the same position.   Defendant's proffer of evidence shows that a reduction in force conducted by defendant in 2001 shows that most of the employees dismissed were young, that is, below forty (40) year of age.  Deft's Uncont. ¶59.  In addition, out of thirty one (31) new employees hired by defendant during the year 2001, eight (8) were over fifty (50) years of age and one (1) employee was over sixty (60) years of age. *Id*. at ¶60.  Thus, the fact that those affected by the reduction in force included younger individuals and the fact that at least nine (9) of the new employees hired were over fifty (50) years seems to indicate that age was not a motivating factor in defendant's in the challenged employment action.

Héctor Vélez González, et al. v. Suiza Dairy Corp.
Civil No. 03-1755 (DRD)
Report and Recommendation
Page No. 22

In view of the above, it is this Magistrate Judge's contention plaintiff Vélez González has not established a *prima facie* case of age discrimination.[4]

Even assuming arguendo that Vélez González can establish a *prima facie* case for age discrimination, his claims fail nonetheless. In compliance with its burden of producing a non-discriminatory reason for its dismissal of Vélez González, Suiza Dairy has proffered that his termination resulted from Vélez González' failure to comply with policies of his employer in the adequate operation of the business and with the duties and responsibilities of his position, including failure to achieve required sales quotas and goals and compliance with money collection procedures.

Now the burden shifts to Vélez González to show by a preponderance of the evidence that the proffered reason is merely a sham to cover-up a discriminatory animus. Vélez González, however, is unable to bring forth sufficient evidence to rebut Suiza Dairy's non-discriminatory reason. Vélez González has failed to rebut or present, even in his sur-replies, contested issues as to defendant Suiza Dairy's reasons for employment action being pretextual (Docket Nos. 88, 95). No evidence has been put forth by Vélez González to contest the facts presented by Suiza Dairy which justify that it had a legitimate business reason to terminate him.

For example, no evidence has been presented by Vélez González to rebut the following facts: weekly meetings were held between Suiza Dairy's Sales Director, Mr. Richard Valdés and

---

[4] Plaintiffs have not filed a claim of retaliation against defendant, for which no discussion of higher salaries and benefits to newly recruited personnel upon addressing several alleged flaws of defendant Suiza Dairy's policies is deemed appropriate, except as to motive and intent for their age discrimination claims.

plaintiff Vélez González, during the months prior to his employment termination (Vélez González depo. pp. 72-73, 92; deft's Exhibit 1);  Vélez González' performance evaluation dated February 19, 2001, for the period of March 2000 through December 2000, indicated he was not meeting established sales quotas, had problems with money reconciliations of salesmen in his zone and had a high balance of account receivables(Deft's Exhibit 3); Vélez González did not meet established sales quotas and sales goals of his employer Suiza Dairy (Deft's Uncont. ¶29-33); Vélez González was the Sales Supervisor with the highest volume of accounts receivables in Suiza Dairy (Deft's Exhibit 9); Vélez González' sales volume for the category of milk decreased by 3.9% for the year 2000 to 2001(*Id.)*; Vélez González' sales volume for the category of juices decreased by 11.6% for the years 2000 to 2001(*Id.)*; and Suiza Dairy terminated employment of ten (10) salesmen and/or sales supervisor during the years 2000 and 2001 for failure to comply with their assigned duties.

Finally, we note that Vélez González' claims of hostile environment by Mr. Richard Valdés are not considered a personal issue, rather it was one against all supervisors in that Mr. Valdés prompted them to lower the collections or they would have to leave the company. Vélez González' depo., p. 220.

In view of the foregoing, plaintiff has failed to establish a *prima facie* case of age discrimination.  Accordingly, it is recommended that summary judgment be GRANTED as to plaintiff Vélez González' federal cause action.

### E.     Plaintiff Hipólito González Andino.

Defendant Suiza Dairy submits, as to plaintiff González Andino, summary disposition is appropriate as to his age and race discrimination claims for being discharged from his position as a Sales Supervisor (**Docket No. 46**).  Defendant Suiza Dairy's statement of uncontested facts relevant to the controversy at hand avers:

1.     Plaintiff Hipólito González Andino began to work for defendant Suiza Dairy on October 10, 1994, as a Merchandise Manager and two (2) years later held the position of sales Supervisor. González Andino's depo. p.17; *id*., Deft's Exhibit 2.

2.     Plaintiff González Andino has worked in charge of Suiza Dairy's territorial zone 4 since October 10, 1994. *Id*., p. 18.

3.     As a Sales Supervisor González Andino, among others duties but relevant to this claim had to: oversee the work of salesmen in his territorial zone; supervise and increase the sales of his territorial zone; ensure that accounts receivables be paid by clients who were granted credit by salesmen of the zone within seven (7) days as required by company's policy; adequately supervise money collection and reconciliation of salesmen invoices of salesmen within his supervision; meet and/or increase established sales quotas for products and coordinate the installation and maintenance of refrigerators at clients' facilities, as well as conduct regular visits to clients together with subordinate salesmen.  González Andino's depo. pp. 24-26;  (Docket No. 46) Deft's Exhibit 2.

4. The accrual of high balance of clients' debts breached established company policies in that accounts receivables could not exceed payment overdue for more than seven (7) days. Suiza Dairy's Sales Policy, Deft's Exhibit 20 p. 6.

5. Plaintiff González Andino was subject to a memo from Suiza Dairy on September 26, 2000, regarding salesmen under his supervision, Fernando González, with an outstanding balance of $26,362.37, for accounts receivables, after he had been suspended without making arrangements to liquidate such amount. Deft's Exhibit 4; Exhibit 5, pp. 87-88.

6. On February 19, 2001, plaintiff González Andino was evaluated and warned by his employer Suiza Dairy  on required improvement and need for compliance with duties assigned as a Sales Supervisor. Deft's Uncontested ¶6; Exhibit 3; González Andino's depo. pp. 25-26.

7. González Andino received progressive evaluations regarding his work performance and memoranda thereof on February 27, 2001, regarding reduction of accounts receivables of balances owed by his salesmen. Deft's Uncontested ¶¶ 15-16.

8. Suiza Dairy conducted follow-up action to monitor plaintiff González Andino's improvement and compliance with his work duties as Sales Supervisor. *Id*. ¶27.

9. On March 22, 2001 and October 8, 2001, González Andino was requested, by memorandum, to show improvement regarding money collection and accounts

receivables.  Deft's Uncontested ¶¶ 17-18.

10.  On October 18, 2001, González Andino received notice of a salesman in his territorial zone who had not reported the sales registered in the hand held computer as required and a memorandum on October 25, 2001, in relation to the outstanding accounts receivables balance.  *Id*. at ¶¶ 21-25; deft's Exhibit 14.

11.  By November 5, 2001, González Andino was notified by memorandum of salesmen under his supervision who had failed to process a large number of credit notes.  Deft's Exhibit 16.

12.  Plaintiff González Andino' account receivables increased, during a ten (10) month period of February 2001 through December 2001, from $204,221.38 to $269,762.03.  Deft's uncontested ¶¶ 32-35.

13.  From the total amount of $269,762.03 of account receivables owed by plaintiff González Andino's salesmen, $224,921.12 had an aging over seven (7) days. *Id*.

14.  By December of 2001, plaintiff González Andino was the Sales Supervisor whose salesmen held the second highest volume of account receivables over twenty (28) days old in Suiza Dairy.  *Id*. ¶¶ 36-38; deft's Exhibit 17.

15.  Defendant Suiza Dairy had to engage in filing of money collection complaints against indebted salesmen assigned to González Andino's territorial sales zone before the Puerto Rico First Instance Court.  Deft's Uncontested ¶40.

16.     González Andino's sales volume for the category of juices decreased by 8.2% for the years 2000 to 2001.  Deft's Uncontested ¶¶41-42; deft's Exhibit 15.

17.     On December 17, 2001, plaintiff González Andino was discharged from his employment with defendant Suiza Dairy.  Deft's Uncontested ¶45.

In relation to plaintiff González Andino's claim of race discrimination, defendant Suiza Dairy solely submits Exhibit 33 to establish plaintiff, regardless of his claims as to other employees good looks, was participating in company activities, and while not negating comments as to calling him "negrito", defendant Suiza Dairy claims it was acceptable to plaintiff to be addressed as such.  Deft's Uncontested ¶¶ 67-70; Exhibit 5, pp. 5-9.

In his opposition to defendant Suiza Dairy's motion for summary judgment, plaintiff González Andino submits as unopposed in relation to his age discrimination claim that:

1.     González Andino's sales for the year 2001 were higher than the previous years and other sales supervisors with lower sales were not discharged.  González Andino's depo. p. 111-112, 117, 167-168.

2.     Suiza Dairy's claim of sales quotas and numbers related to sales of González Andino were not subject to sanction, prior admonishment or warning, solely conversations, except for a memo to improve trade and collection situations by the end of 2000.  Exhibit 6, José Figueroa's depo. pp. 131-132, 150, 178.

3.     A review of the sales figures of González Andino showed improvement by the time Mr. Figueroa and Mr. Richard Valdés met to discuss discharge of both

plaintiff employees Vélez González and González Andino. Exhibit 6, Figueroa's depo. pp. 133, 140.

4.      As to defendant Suiza Dairy's claim that salesman Fernando González' account receivable was pending payment, González Andino, as the supervisor in charge of suspending said salesman, took necessary remedial action, regardless he was his brother.  Still, salesmen are the ones who grant credit to customers and are liable for accounts receivables as to credit granted to clients.  Plaintiff's Contested Facts ¶¶ 51-52;  Deft's Exhibit 5, Plaintiff's Exhibit 2, Gónzalez Andino's depo. p. 88; Plaintiff's Exhibit 3, pp. 131-132; Plaintiff's Exhibit 6,  José Figueroa's depo. pp. 70-71, 81, 97-99.

5.      There was no restructuring or reorganization in Suiza Dairy's Sales Department by the end of  December of 2001; Figueroa's depo. pp. 195-196.

6.      González Andino called Mr. José Figueroa's attention several times related to problems of salesmen not receiving the products they had requested. *Id*. pp. 223-224; plaintiff's contested ¶ 54.

7.      González Andino brought up clients for Suiza Dairy and could not be considered negligent in that aspect and would correct his weak points and situations when brought up to him. Figueroa's depo. p. 226.

8.  Mr. Juan Figueroa, González Andino's direct supervisor, had no participation in the evaluation of González Andino's performance, only Mr. Richard Valdés. *Id*. pp. 131-132.

9.  Mr. Juan Figueroa found on the same day of December 17, 2001, from Mr. Richard Valdés, that plaintiff González Andino, in addition to plaintiff Mr. Vélez González, was also going to be discharged. *Id*. pp. 132-33.

10. At the time of Mr. Richard Valdés' deposition, he could not recall any information as to any of the salesmen's average of sales or any document as to sales average or collection average pending payment of any of the sales supervisors, including herein plaintiffs. Docket No. 78, Valdés' depo. pp. 27-58.

11. Notwithstanding Mr. José Figueroa's statement that no prior admonishment, sanction or reprimand were issued to plaintiffs, Mr. Richard Valdés' testified that both plaintiffs Vélez González and González Andino were placed on probation for ninety (90) days; *Id*. pp. 60-61.

12. Upon discharge, González Andino's sales territory was assigned to Mr. Ramón Rodríguez, who was much younger, 34 years old, white and with blue eyes. Figueroa's depo. pp. 181-182; Valdés depo. p. 115; González Andino's depo. pp. 112, 154-155; plaintiff's Exhibit 17.

This Magistrate Judge also considered the reports submitted by defendant Suiza Dairy (Exhibit 11) that were object of *in limine* determination as to being admissible for summary

judgment. These reports were produced more than four (4) years after the events and were not available at the time of plaintiff's discharge.[5] Furthermore, by the time of the deposition testimony of Mr. Richard Valdés on October 20, 2004, he could not recall any particular figure or make any comparison as to salesmen or their territorial sales. Plaintiff's Exhibit 5, Valdés depo.

Even if the reasons proffered by the employer are discredited by plaintiff, it would not automatically mandate a finding of discrimination. The ultimate question is not whether the explanation was false, but whether discrimination was the cause of the conduct at issue. Nonetheless, disbelief of the reason may, along with the *prima facie* case, on appropriate facts, permit the trier of fact to conclude the employer had discriminated." Zapata-Matos v. Reckitt & Colman, Inc., 277 F.3d 40, 45 (1st Cir. 2002); Reeves, 530 U.S. at 147-48, 120 S.Ct. 2097. *See* Ronda-Pérez v. Banco Bilbao Vizcaya, 404 F.3d 42, 44 (1st Cir.2005) ("[t]he question to be resolved is whether the defendant's explanation of its conduct, together with any other evidence, could reasonably be seen by a jury not only to be false but to suggest an age-driven animus."). *See also* Candelario Ramos v. Baxter Healthcare Corp. of P.R., 360 F.3d 53, 56 (1st Cir. 2004).

Plaintiff González Andino has established a *prima facie* case of both age and race discrimination. In addition, evidence is also available to raise genuine issues of material facts

---

[5] See Santiago-Ramos v. Centennial, 217 F.3d at 56 (noting that memo setting forth legitimate grounds for discharging employee, prepared after it became apparent that former employee was initiating litigation, could be considered "pretextual post hoc justifications because [grounds] were only provided in anticipation of litigation").

in controversy as to the pretextual nature of defendant Suiza Dairy's reasons for his termination. Thus, summary judgment as to plaintiff González Andino is not appropriate. We explain.

Although defendant Suiza Dairy claims that Title VII allegations because of race were not artfully drafted, plaintiff has established he is considered a Puerto Rican national of dark skin color and there is no controversy that González Andino was called upon by his employer as "negrito" thereafter being replaced after discharge by a younger, white man, with blue eyes. Exhibit 2, pp. 112. 117. Such term "negrito" has been translated by plaintiff in his opposition and complaint as "nigger", black or "black", and by defendant, the employer, as either a term of endearment or an adjective of no pejorative connotation acceptable to all employees present, including plaintiff González Andino, as non-offensive when used in daily conversations. *Id*. p. 118; Vélez González' depo. pp. 238-239.

Defendant submits through Exhibit 33, as an attempt to establish lack of race discrimination, plaintiff González Andino was made participant in public relations activities of the company, mostly trade shows, notwithstanding his allegation that only employees considered as having "good looks" were considered by the employer and comments to the effect by Mr. Richard Valdés.

Plaintiff González Andino has raised herein a genuine issue of material fact on whether he is to be considered black, there being an issue as to his color, not only about his race, insofar as employment discrimination; lacking any controversy that he was the only black Sales

Supervisor and he was constantly subject to name calling or addressed in relation to his skin color by defendant Suiza Dairy, other sales supervisors, and Mr. Richard Valdés.

Plaintiff González Andino has also established, within the framework of summary judgment as requested by defendant Suiza Dairy, that he was thereafter substituted by what is referred as "good looking" younger, white color, and blue eye employee, who was taken to the trade shows even if related to plaintiff González Andino's sales area; Exhibit 2, González Andino's depo. pp. 154-155, 158, 193-194, 196, 199, 202; Exhibit 3, p. 6, 10.

Title VII, Section 703 (a) provides:

> [i]t shall be unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual with respect to his compensation, terms, conditions or privileges of employment, because of such **individual's race, color**, religion, sex or national origin.  42 U.S.C. § 2000e-2 (emphasis added).

The central question in any employment-discrimination case is whether the employer would have taken the same action had the employee been of a different ... [race, color] and everything else had remained the same. *See* Domínguez Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 430-31 (1st Cir.2000) (citing Carson v. Bethlehem Steel Corp., 82 F.3d 157, 158 (7th Cir. 1996).  Under Puerto Rico law, which plaintiff has also presented with these federal claims, the burden shifting is significantly more favorable to the employees than under Title VII.

Where a plaintiff in a discrimination case makes out a *prima facie* case and the issue becomes whether the employer's stated nondiscriminatory reason is a pretext for discrimination, courts must be 'particularly cautious' about granting the employer's summary judgment. Hodgens v. General Dynamics Corp., 144 F.3d 151, 167 (1st Cir. 1998).  Doubts about the

fairness of an employer's decision or an employer's misjudging of an employee's qualifications, while not necessarily dispositive of employer's motive may be probative of whether the employer's reasons are pretexts for discrimination.  *Id.*

While a satisfactory evidentiary explanation by the employer for its actions destroys the legally mandatory inference of discrimination arising from the employee's *prima facie* case, the evidence and inferences that properly can be drawn from the evidence presented during the employee's prima facie case may be considered in determining whether the employer's explanation is pretextual.   St. Mary's Honor Center v. Hicks, 509 U.S. at 502, 511, 113 S.Ct. 2742 (1993).

Furthermore, there is a genuine controversy of facts on whether the figures as to sales, both in milk and juices pertaining to plaintiff González Andino were in good or even better standing than other salesmen as to the sales quotas and goals; González Andino's depo. p. 46; Figueroa's deposition pp. 132-133, 222-224, 226.; Valdés' deposition, pp. 28-40, 53.  There is also genuine controversy of facts on whether González Andino's compliance with the duties of a sales manager were reasonably satisfactory and/or acceptable and the employer's explanations would be counted off balance as a pretext for a discriminatory animus.

Looking at the totality of the circumstances, considering deposition testimonies of both plaintiff González Andino and defendant, while close to the line, would be sufficient to withstand summary judgment further considering the evidence and all reasonable inferences therefrom in the light most favorable to plaintiff.  *See* Buenrostro v. Collazo, 973 F.2d 39, 41 (1st

Cir.1992). *See also* Danco, Inc. v. Wal-Mart Stores, Inc., 178 F.3d 8, 16 (1ˢᵗ Cir.1999) (plaintiff alleged comments or jokes of a racial nature; Landrau-Romero v. Banco Popular De Puerto Rico, 212 F.3d 607, 614 (1ˢᵗ Cir. 2000).

In view of the foregoing, González Andino has raised genuine issues of relevant facts in controversy which hinder summary judgment in this case as to his claims of age and race discrimination. Accordingly, it is recommended that summary judgment be DENIED as to plaintiff González Andino's federal cause action.

### F.    **Supplemental Jurisdiction - State Claims**.

At summary judgment defendant Suiza Dairy seeks disposition, on same grounds and evidence above discussed, of plaintiffs' claims under pendent jurisdiction for being discriminated, Law 100 of June 30, 1959[6], 29 L.P.R.A. §146, and entitlement to severance pay for dismissal without just cause, Law 80,[7] P.R. Laws Ann. tit. 29, §§ 185a-185m.

Pendent or supplemental jurisdiction exists whenever there is a claim arising under the Constitution, the laws of the United States, and treaties made under their authority and the relationship between that claim and the state claim can be found to constitute but one

---

[6] Under Puerto Rico Law 100, which prohibits age discrimination, if employer establishes just cause for discharge, burden of proof returns to employee, but if employer fails to prove just cause, it bears the burden of proving by a preponderance of the evidence that the challenged decision was not motivated by age discrimination. Law 100 offers a significantly more favorable standard to plaintiffs than does ADEA. Age Discrimination in Employment Act of 1967, § 2 *et seq. See* Baralt v. Nationwide Mut. Ins. Co., 251 F.3d 10 (1ˢᵗ Cir. 2001).

[7] In action for unjust discharge under Puerto Rico's Law 80, after employee established by preponderance of evidence that he had been discharged, burden shifted to employer to show just cause for dismissal. *See* Gonzalez v. El Dia, Inc., 304 F.3d 63 (1ˢᵗ Cir. 2002).

Héctor Vélez González, et al. v. Suiza Dairy Corp.
Civil No. 03-1755 (DRD)
Report and Recommendation
Page No. 35

constitutional case.  The state claims must be linked to the federal claim by a "common nucleus

of operative facts", and must be sufficiently substantial to confer federal court jurisdiction.

United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130 (1966); Rodríguez v. Doral

Mortgage, 57 F.3d 1168, 1175 (1st Cir. 1995).

The exercise of pendent jurisdiction as to plaintiffs' state claims are subject to the Court's

discretionary power.  Federal claims against defendants survive the motion for summary

judgment.  Thus, upon an assessment of judicial economy and fairness to litigants, it is

recommended to the Court to exercise pendent jurisdiction as to plaintiffs' Commonwealth

claims against defendant González Andino.

Since the federal claims of plaintiff Vélez González were recommended for summary

disposition, as above explained, it is recommended to this Court not to exercise pendent

jurisdiction over the state claims raised by plaintiff Vélez González.[8]  Accordingly, all state claims

raised by plaintiff Vélez González should be DISMISSED WITHOUT PREJUDICE pursuant to

28 U.S.C. § 1367(c)(3).[9]

There being factual issues in controversy as to the claims raised by plaintiff González

Andino, summary disposition of state claims is not warranted.  In pendent state claims the

exercise of pendent jurisdiction is discretionary and the claims raised in this litigation as to

---

[8]  In light of above discussed, there is no need to delve into the merits of Vélez González' state claims.

[9]  According to the supplemental jurisdiction statute, "district courts may decline to exercise supplemental jurisdiction" when "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).

plaintiff González Andino are very closely linked to the events and to the evidence to be presented as to the employer.[10] Thus, upon an assessment of judicial economy *vs.* fairness to litigants, it is recommended to this Court to exercise supplemental jurisdiction as to plaintiff González Andino's  claims under state law against defendant Suiza Dairy.

## IV. CONCLUSION

In view of the foregoing, it is recommended that defendant Suiza Dairy's motion for summary judgment as to plaintiff Vélez González BE GRANTED; and that defendant Suiza Dairy's motion for summary judgment as to plaintiff González Andino BE DENIED.

In addition, it is recommended to the Court to exercise pendent jurisdiction over the state claims of plaintiff González Andino and not to exercise pendent jurisdiction over the state claims of plaintiff Vélez González.  Accordingly, it is recommended that all state claims of plaintiff Vélez González be DISMISSED WITHOUT PREJUDICE.

IT IS SO RECOMMENDED.

The parties have **FIVE (5) days** to file any objections to this report and recommendation.  Failure to file same within the specified time waives the right to appeal this order.  Henley Drilling Co. v. McGee, 36 F.3d 143, 150-151 (1st Cir. 1994); United States v. Valencia, 792 F.2d 4 (1st Cir. 1986).  *See* Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 991 (1st Cir. 1988) ("Systemic efficiencies would be frustrated and the

---

[10]  *See* United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130 (1966); Rodriguez v. Doral Mortgage Corp., 57 F.3d 1168, 1177 (1st Cir.1995).  *See also* Flowers v. Fiore, 359 F.3d 24, 28 (1st Cir. 2004).

magistrate's role reduced to that a mere dress rehearser if a party were allowed to feint and

weave at the initial hearing, and save its knockout punch for the second round").

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 14th day of September of 2005.


S/ CAMILLE L. VELEZ- RIVE
CAMILLE L. VELEZ-RIVE
United States Magistrate Judge